UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US INVENTOR, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES PATENT AND TRADEMARK OFFICE, <br><br> Defendant. | Civil Action No. 21-cv-2894 (TSC) |

**MEMORANDUM OPINION**

Plaintiff U.S. Inventor, Inc. sued the United States Patent and Trademark Office ("PTO") under the Freedom of Information Act ("FOIA"), for failure to produce documents responsive to its FOIA request. The parties cross moved for summary judgment on whether Defendant conducted searches reasonably expected to uncover all relevant documents. In its cross motion, Defendant provided a detailed, 15-page declaration, explaining the individuals and offices it consulted in response to Plaintiff's FOIA request, the searches it undertook, and why, and what documents those searches turned up. That declaration is sufficient to show that Defendant conducted reasonable searches, and when the burden shifts, Plaintiff fails to create substantial concern to the contrary.

Thus, having considered the record and the parties' briefing, the court will DENY Plaintiff's motion for summary judgment and GRANT Defendant's cross motion.

**I.   BACKGROUND**

On August 4, 2021, Plaintiff filed a FOIA request with Defendant, seeking records regarding the PTO Director's delegations of authority to its Commissioner, Andrew Hirshfeld,

and to various Administrative Patent Judges ("APJs"). Def.'s Statement of Undisputed Material Facts, ECF No. 19-9 ¶¶ 1–5 ("Statement of Facts").[1] Plaintiff sought materials delegating authority to Hirshfeld (Request 1); notifying the Comptroller General of the Director vacancy (Request 2); delegating authority to the APJs to institute proceedings (Request 3); and delegating authority to the APJs to adjudicate proceedings on the merits (Request 4). *Id.* ¶¶ 2–5.

Defendant acknowledged receipt of the request on August 5, 2021, when it stated that it expected to send its response to this request no later than September 1, 2021. *Id.* ¶ 7. Defendant did not send Plaintiff a response, however, until September 22, 2021, when it claimed that its "twenty-day statutory response period for the Agency's initial determination is September 22, 2021," and "extended" that period by "ten additional working days to October 6, 2021." *Id.* ¶ 9. The following day Plaintiff responded, notifying Defendant of a discrepancy regarding the calculation of business days in its letter. *Id.* ¶ 10. Defendant acknowledged the error, apologized, and indicated it would release responsive records as quickly as possible. *Id.* ¶ 11.

Plaintiff received no response, and filed this action on November 2, 2021, seeking a declaration that Defendant violated FOIA, and an injunction requiring Defendant to immediately process and disclose the requested records. Compl., ECF No. 1 ¶ 23. Plaintiff claims Defendant violated FOIA by failing to comply with the time limits in 5 U.S.C. § 552(a)(6)(A)(i) for making an initial determination or producing responsive documents. *Id.* ¶¶ 21–22.

On November 19, 2021, Defendant produced 42 pages of records responsive to Requests 1, 3, and 4, noting there were no responsive documents to Request 2. Statement of Facts ¶¶ 13–14. Two pages of records responsive to Request 2 were produced in August 2022. *Id.* ¶ 16.

---

[1] Plaintiff responded to Defendant's statement of facts, agreeing with some and disagreeing with others. *See* Pl.'s Resp. to Def.'s Statement of Undisputed Facts, ECF No. 22-1. The court relies only on facts upon which Plaintiff and Defendant agree.

Following an impasse between the parties regarding whether Defendant had produced all responsive records, both sides moved for summary judgment.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to material fact and the movant is entitled to judgment as a matter of law."  "FOIA cases typically and appropriately are decided on motions for summary judgment." *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (citation omitted).

In reviewing a motion for summary judgment in a FOIA case, the court must view the facts in the light most favorable to the requester. *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("*Weisberg II*").  Unlike non–FOIA cases, the defendant, rather than the plaintiff, bears the initial burden.  5 U.S.C. § 552(a)(4)(B).  Once the defendant meets that burden, "the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld . . . records." *Span v. U.S. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

## III.     ANALYSIS

**A.     Reasonably calculated searches under FOIA**

"The fundamental principle animating FOIA is public access to government documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citation omitted). "The law in this circuit on agency obligations under FOIA" "embraces" this purpose even though "the number of requests may pose burdens on agencies." *Id.* (citations omitted).  To prevail on summary judgment, an agency must show "that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C.

Cir. 1983) ("*Weisberg I*"). To do so, the "agency must show that it made a good faith effort," "using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("*Oglesby I*"). This reasonableness standard requires an adequate search, not a perfect one—the agency is not obliged to "search every record system," *id.*, or "speculate about potential leads," *Kowalczyk v. U.S. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996). Moreover, the plaintiff may not prevail by showing only that "further documents might conceivably exist." *Weisberg I*, 705 F.2d at 1351 (quoting *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) (per curiam)); *see Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[F]ailure of an agency to turn up one specific document in its search does not alone render a search inadequate.").

An agency "may rely upon affidavits to show it has conducted a reasonable search, as long as they are 'relatively detailed and nonconclusory and submitted in good faith.'" *Weisberg I*, 705 F.2d at 1351 (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1979)) (formatting modified). For example, the D.C. Circuit in *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1185–86 (D.C. Cir. 1996) ("*Oglesby II*"), concluded that the FBI's search for records was adequate despite the plaintiff's concern that a "section tickler" noted in a document meant that more responsive records existed. The court pointed out that the agency did not locate any additional documents and had informed the plaintiff that the "section tickler" reference "did not indicate that any other responsive documents existed." *Id.* The court refused to "second-guess FBI's affidavit" regarding the meaning of this "section tickler" reference. *Id.* at 1186; *accord id.* (refusing to second-guess State Department's affiant regarding how a given repository could be searched).

By contrast, the D.C. Circuit found the affidavit in *Oglesby I* inadequate because it merely stated: "Based upon the information contained in Mr. Oglesby's letter, and consistent with customary practice and established procedure, a search was initiated of the Department record system most likely to contain the information which had been requested."  920 F.2d at 68.  Among other flaws, that conclusory affidavit did not "identify the terms searched or explain how the search was conducted."  *Id.*; *accord Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 551–52 (D.C. Cir. 1994) (agency affidavits that do not "describe in any detail what records were searched, by whom, and through what process" are inadequate at summary judgment).

A court should deny summary judgment "if a review of the record raises substantial doubt" regarding the reasonableness of the search, "particularly in view of 'well defined requests and positive indications of overlooked materials.'"  *Valencia-Lucena*, 180 F.3d at 326 (quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979)).  Accordingly, in *Valencia-Lucena*, the D.C. Circuit concluded that summary judgment for the agency was inappropriate where the defendant had told the plaintiff that the records requested "may be located at the federal records center in Georgia," but then declined to search that office.  *Id.* at 327.  The court held that "[i]t is well-settled that if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search" those locations "barring an undue burden."  *Id.* (citations omitted).  This principle, however, requires proof in the record; "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."  *Iturralde*, 315 F.3d at 316 (quoting *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)); *accord Steinberg*, 23 F.3d at 552 ("[M]ere reference to other files does not establish the existence of documents that are relevant to [the plaintiff's] FOIA request.").

"Once an agency has made a *prima facie* showing" of an adequate search, "the burden shifts to the plaintiff to provide countervailing evidence sufficient to raise substantial doubt concerning the adequacy of the agency's search." *Rodriguez v. Dep't of Defense*, 236 F. Supp. 3d 26, 35 (D.D.C. 2017). Thus, under this burden-shifting framework, once the agency shows the search was adequate, the court will grant it summary judgment unless the plaintiff can provide evidence to the contrary. *See id.*

As explained below, Defendant's declaration demonstrates that its search in response to Plaintiff's FOIA request was reasonable. Plaintiff has not raised substantial doubt regarding the adequacy of the search, and therefore summary judgment in favor of Defendant is warranted.

**B.      Request 1**

In Request 1, Plaintiff sought "all communications, documents, orders, or letters delegating to Mr. Andrew Hirshfeld the performance of the functions of the duties of the Director effective after January 20, 2021, including the identification of the PTO officer who made the delegation, and any documents evidencing [his] acceptance of that delegated authority." Statement of Facts ¶ 2. In response to this request, Defendant released two documents: Agency Organization Order 45-1, and former Director Iancu's succession memorandum. Decl. of Kathryn Siehndel, ECF No. 19-8 ¶¶ 21–22 ("Decl.").

In its search, Defendant enlisted the assistance of the Correspondence Specialist for the Office of the Under Secretary ("OUS") who "searched the document management database in OUS called 'IQ,' which is used to manage official correspondence, memoranda, reports, and supplemental information." *Id.* ¶ 19. Defendant's declaration explained that, "[i]f OUS had any official delegation or acceptance of delegation of Mr. Hirshfeld's role as Director, it would have been contained in the IQ," but OUS found no responsive records. *Id.* Defendant also sent a

search request to the Senior Counsel for Legislative and Regulatory Affairs in the Office of General Counsel, who confirmed that the delegation to Hirshfeld was set forth in Agency Organization Order 45-1 and that former Director Iancu had prepared a memorandum prior to his departure setting forth a succession plan, which identified Hirshfeld to serve as Director. *Id.* ¶ 21. Both documents were provided to Defendant and then released to Plaintiff. *Id.* ¶¶ 21–22.

        This detailed declaration shows that Defendant "made a good faith effort" to uncover all relevant documents and used methods it "reasonably expected to produce the information requested." *Oglesby I*, 920 F.2d at 68; *see Weisberg I*, 705 F.2d at 1351. The declaration explained in detail who conducted the searches, why those parties were enlisted to search, and what kinds of records were stored and searched by those parties. *See Steinberg*, 23 F.3d at 551–52. It also explained why the agency was unable to find some of the requested records: Defendant "had no specified records evidencing Mr. Hirshfeld's acceptance of the delegated authority to perform the duties and functions of the Director of the USPTO, because he did not sign any such documents." Decl. ¶ 22. Finally, Defendant averred that "using key word searches," such as "delegation and/or acceptance," "was not the path to finding useful records for Plaintiff," as such a search would not have even resulted in finding the two responsive records. *Id.* ¶ 26.

        Accordingly, the burden shifts to Plaintiff to raise substantial doubt concerning the adequacy of Defendant's search. Plaintiff claims that Defendant's search was inadequate because it released no records "evidencing Mr. Hirshfeld's acceptance of [the] delegated authority" and did not ask Hirshfeld if he had any such records. Mem. in Supp. of Mot. for Summ. J., ECF No. 13-1 at 8–9 ("Motion"); Pl.'s Combined Reply in Supp. of Mot. for Summ. J. and Opp'n to Def.'s Cross Mot. for Summ. J., ECF No. 22 at 8–10 ("Pl.'s Reply"). But the

declaration indicates that Defendant did, in fact, ask Hirshfeld "whether any records of a written delegation or acceptance existed," and he "confirmed that the answer was no." Decl. ¶ 23. Plaintiff also claims that "[i]t is inconceivable that [Defendant] has no records of Commissioner Hirshfeld's acceptance of those functions and duties." Motion at 9. But Plaintiff's "mere speculation" that such "documents may exist does not undermine a finding that the agency conducted a reasonable search for them." *Iturralde*, 315 F.3d at 316 (quoting *SafeCard Servs.*, 926 F.2d at 1201).

Plaintiff also claims Defendant left "the Court in the dark as to the actual extent of the search," leaving open the possibility that Defendant "searched the proverbial backyard swimming pool." Pl.'s Reply at 9–11. But, to the extent Defendant intends this as a serious argument, this amounts to "mere speculation" and leaves the court "in the dark" regarding what additional details Plaintiff believes were required in the declaration. *See Iturralde*, 315 F.3d at 1316 (quoting *SafeCard Servs.*, 926 F.2d at 1201).

In sum, the record indicates that Defendant's search in response to Request 1 was reasonably calculated to uncover all relevant documents.

**C.     Request 2**

In Request 2, Plaintiff sought "notifications that the PTO provided under 5 U.S.C. § 3349(a)(1) to the Comptroller General of the United States and to each House of Congress of the vacancy that occurred in January 2021, in the office(s) whose functions and duties were delegated to" Hirshfeld. Statement of Facts ¶ 3. Defendant initially produced no records in response to this request, Decl. ¶ 20, but eventually obtained two pages of records from a parent agency and released them to Plaintiff, *id.* ¶ 25.

In its search, Defendant had the Office of Governmental Affairs look for responsive records, which would maintain "[a]ny reporting to the Comptroller General or other branch of Congress," but it found no responsive records. *Id.* ¶ 20. Moreover, Defendant learned that it "did not file vacancy reports with either the Comptroller General or Congress" under the Federal Vacancies Reform Act, which it confirmed with individuals who "would have been involved in any such filing." *Id.* ¶ 24. Nevertheless, after learning that the Department of Commerce had reported Defendant's Director vacancy, Defendant obtained a copy of the transmittal email and submission and released them to Plaintiff. *Id.* ¶ 25. That disclosure went above and beyond Defendant's obligations under FOIA, since agencies "need not produce records maintained by another federal government agency." *Callaway v. U.S. Dep't of Treasury*, 893 F. Supp. 2d 269, 275 (D.D.C. 2012). And, again, Defendant explained that key word searches would not have been helpful in the search. Decl. ¶ 26.

Plaintiff contends Defendant's search in response to Request 2 was unreasonable because its late production of the Department of Commerce documents show that Defendant did not take its request seriously and failed to conduct "anything beyond a perfunctory search." Motion at 9–10; *accord* Pl.'s Reply at 11. Defendant's declaration squarely rebuts that assertion by explaining the various inquiries it made, both to verify that it did not file anything related to the Director vacancy and to seek out any reporting to the Comptroller General or Congress. Decl. ¶¶ 20, 24–26. Indeed, Defendant went beyond FOIA's search requirements by finding and producing the Department of Commerce documents. *Callaway*, 893 F. Supp. 2d at 275 (Agencies "need not produce records maintained by another federal government agency or obtain records from any other sources.").

Plaintiff also argues that Defendant's search was inadequate because it did not explain how it decided which subject matter experts were relevant to Plaintiff's request and consulting subject matter experts "is not a search of communications on a specific issue to specific recipients." Pl.'s Reply at 12. Defendant explained that it had the Office of Governmental Affairs search for records, because that office would have been responsible for any reporting to the Comptroller General or other branch of Congress, Decl. ¶ 20, and that it asked the individuals who "would have been involved in" any filing under the Federal Vacancies Reform Act to verify whether such documents existed, *id.* ¶ 24. Thus, Defendant first had the relevant office search for the records Plaintiff requested, and then, when that search did not turn up responsive records, verified with individual experts to ensure it had not missed the records. To be sure, Defendant's declaration does not explain how the declarant knew that the individual would have been involved in any such filing, but Plaintiff has given the court no reason to second guess the declarant. Moreover, the fact that Defendant's parent agency, the Department of Commerce, did report the vacancy further supports Defendant's conclusion that it did not do so itself. Plaintiff therefore fails to raise substantial doubt concerning the adequacy of Defendant's search in response to Request 2.

**D.     Requests 3 and 4**

In Request 3, Plaintiff sought "all communications, documents, orders, or letters delegating to the [APJs] the Director's authority under 35 U.S.C. §§ 314, 324 to institute the respective trial proceedings identified . . . and any documents evidencing [their] acceptance of that delegated authority," including, but not limited to, "records of delegation and sub-delegation of other persons in the chain of delegation from the Director to the APJs, including any documents evidencing each of these persons' acceptances of such delegated authority."

Statement of Facts ¶ 4.  Relatedly, in Request 4, Plaintiff sought "all communications, documents, orders, or letters designating under 35 U.S.C. [§] 6(c) the [APJs] to perform the duty of adjudication on the merits in the respective proceedings identified . . . and any documents evidencing each of these APJ's acceptance of that duty," including, but not limited to, "records of delegation and sub-delegation of other persons in the chain of designation to the APJs, including any documents evidencing each of these persons' acceptances of such delegated authority."  *Id.* ¶ 5.  Defendant released two Standard Operating Procedure documents and referred Plaintiff to a public regulation authorizing the Patent Trial and Appeal Board ("PTAB") to institute trials on behalf of the Director.  Decl. ¶¶ 32–33.

In its search, Defendant's FOIA coordinator and the APJ assigned to the search shared the requests with the Chief Judge, Deputy Chief Judge, and Vice Chief Judge of the Patent Board, who consulted the Executive Team.  *Id.* ¶ 29.  Collectively, the PTAB concluded they did not have any directly responsive records because that authority is delegated through regulation and policy, not on a case-by-case basis.  *Id.* ¶ 30.  Accordingly, the PTAB collected copies of the regulatory and policy documents outlining the delegations of authority to APJs, but Defendant determined most of these documents were not appropriate for release in response to a FOIA request because they are publicly available on Defendant's website and were not directly responsive to Plaintiff's request.  *Id.* ¶¶ 30–31.  Defendant did, however, release the two most recent versions of the PTAB Standard Operating Procedure 1 "Assignment of Judges to Panels" to Plaintiff, which contained an overview of the delegation of the Director's authority to the Chief Judge, and the Chief Judge's ability to further delegate that authority.  *Id.* ¶ 32.

Consulting PTAB leadership—the Chief Judge, Deputy Chief Judge, Vice Chief Judge, and Executive Team—was reasonable.  As Defendant explained, any request for a designation of

authority to an APJ would have come from somewhere in the leadership chain, and any acceptance of such designation would have gone back to leadership. *Id.* ¶ 34. By confirming with leadership that authority was delegated only on an aggregate basis and not on an individual basis, and releasing the documents outlining that delegation process, Defendant "made a good faith effort" and used methods it "reasonably expected to produce the information requested." *Oglesby I*, 920 F.2d at 68.

Plaintiff fails to raise substantial doubt concerning the adequacy of Defendant's search. First, it contends that there "must be written records of such delegation of authority to each APJ to adjudicate each of these cases." Motion at 10. To support its assertion, Plaintiff provides examples of types of documents that it believes exist, such as "an appointment letter or other document specifying the duties and authority to be assumed by the APJ," "written panel designation to each specific case," and the APJ's "acknowledgement" "that they will serve on the specific panel," along with examples of possible searches Defendant should have done. *Id.* at 11–12. But, again, "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *Iturralde*, 315 F.3d at 316 (quoting *SafeCard Servs.*, 926 F.2d at 1201). And "mere speculation" is all Plaintiff has. For instance, a written panel designation to a specific case is not necessarily a delegation of authority. An administrative office could assign APJs to panels, just as a Clerk of Court's office assigns cases to Article III judges. *See* Def.'s Combined Mem. in Opp'n to Pl.'s Mot. for Summ. J. & Cross-Mot. for Summ. J., ECF No. 19 at 18–19 ("[T]he Board communicates its panel assignments electronically via a docketing system."). But judicial power is not delegated to Article III judges through individual case assignments from the Clerk of Court. Plaintiff does not give any reason to assume that APJs receive their authority from panel assignments.

Second, Plaintiff insists that the Standard Operating Procedures Defendant produced were not responsive because they did not enumerate specific APJs. Pl.'s Reply at 13. Defendant explained that it did "not have specific written designations of authority to institute or adjudicate individual [trials], and accordingly, no acceptance of such designations." Decl. ¶ 31. It did, however, have the Standard Operating Procedures documents, which contained "an overview of the delegation of the Director's authority to the Chief Judge, and the Chief Judge's ability to further delegate that authority." *Id.* ¶ 32. Plaintiff faults Defendant simply because the documents it sought did not exist. That, however, does not render Defendant's search unreasonable.

Third, Plaintiff argues that Defendant's search was unreasonable because Defendant did not search the records of the APJs enumerated in Plaintiff's FOIA request. Pl.'s Reply at 15–16. Defendant, however, avers that it did not send its search request to each of the APJs listed in Plaintiff's request "because that effort would not have resulted in the production of responsive records." Decl. ¶ 34. According to Defendant, any records regarding the designation of authority to the APJs would have come from somewhere in the PTAB leadership chain, which Defendant consulted, and any records regarding APJ's acceptances of authority would have then been received by leadership. *Id.* Plaintiff gives no reason why this might not be the case. Instead, Plaintiff invites the court to "micro manage the executive branch" by second guessing the agency's "administrative judgment and expertise." *Johnson v. Exec. Off. for U.S. Atty's*, 310 F.3d 771, 776 (D.C. Cir. 2002). The court declines the invitation.

Finally, Defendant contends that Defendant improperly "narrowly interpreted" these requests, Pl.'s Reply at 12, by reading Plaintiff's request "as looking for formal statements granting or delegating authority to individual judges to institute and adjudicate cases, and the

subsequent acceptance of such authority by those judges," Decl. ¶ 29.  But even a "narrow" interpretation of FOIA request is permissible "as long as the narrowed scope is a reasonable interpretation of what the request seeks."  *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 154 (D.D.C. 2010).  And Plaintiff does not explain why interpreting "all communications, documents, orders, or letters" to mean "formal statements" is so unreasonable.  Consequently, Plaintiff fails to meet its burden to create substantial concern regarding the adequacy of Defendant's search.

## IV.   CONCLUSION

For the foregoing reasons, the court will DENY Plaintiff's Motion for Summary Judgment, ECF No. 13, and GRANT Defendant's Cross Motion for Summary Judgment, ECF No. 19.  Two separate Orders will accompany this Memorandum Opinion.

Date: February 16, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge